# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DON HARRIS, on behalf of himself and all
others similarly situated,

                    Plaintiff,

          v.

DAIMLERCHRYSLER CORP., and
CHRYSLER LLC,

                Defendants.

Court No.:  08 C 2638

Judge Dow
Magistrate Judge Cole

## CHRYSLER LLC'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT; AFFIRMATIVE DEFENSES; AND REQUEST FOR JURY TRIAL

Defendant Chrysler LLC (formerly DaimlerChrysler Corporation) ("Chrysler") by and through its attorneys, SEDGWICK, DETERT, MORAN & ARNOLD LLP, hereby answers the allegations of Plaintiff's Class Action Complaint (the "Complaint"). For sake of convenience and clarity, and without admitting the content of the Complaint, Chrysler sets forth the allegations of Plaintiff's Complaint and its corresponding answers thereto below:

1.     Plaintiff brings this class action Complaint for himself and on behalf of all other persons in the State of Illinois who purchased or leased a model year 1998 – 2004 Chrysler Concorde, Chrysler Sebring, Dodge Intrepid or Dodge Stratus ("Class Vehicles") equipped with a 2.7 liter V6 Engine (the "Engine").

### Answer

Chrysler admits that plaintiff brings this action as stated in paragraph 1 of the Complaint, but denies that the claim has merit and denies that it can be brought on behalf of the class alleged.

2.     Each Class Vehicle is equipped with the same Engine.

### Answer

Chrysler denies the allegations of Paragraph 2 of the Complaint.

3.    Each Engine in each Class Vehicle is defective by reason of an identical Design Defect (the "Design Defect") which is common to the Engines in all Class Vehicles. The Design Defect, as described in detail hereafter, causes the formation of Engine Oil Sludge ("Oil Sludge" or "Sludge'").

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 3 of the Complaint.

4.    Oil Sludge is a waste product of degraded engine oil.  This waste material, which includes hard carbon deposits, is inherently harmful to all internal combustion engines.

**Answer**

Chrysler admits that "oil sludge" is a waste product of degraded engine oil.  It admits that under certain conditions it can harm a vehicle's engine.  It denies all other allegations and innuendo of Paragraph 4 of the Complaint.

5.    The formation of Oil Sludge and resulting harm occurs in all Class Vehicles.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 5 of the Complaint.

6.    The Engines in Class Vehicles are being damaged from first use and throughout the life of the Vehicle. The Engines suffer actual, identifiable, and measurable damage even though the user may not be contemporaneously aware that the damage is occurring.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 6 of the Complaint.

7.    The Design Defect has caused and will cause thousands of Engines to suffer catastrophic failure. Such failure frequently occurs during the operation of Class Vehicles. Accordingly, the Design Defect common to the Engines of all Class Vehicles poses a serious and obvious safety risk and risk of injury or death to the operator and passengers in Class Vehicles and to other motorists.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 7 of the Complaint.

8.    Defendants failed to properly test the Engine before the marketing of the Class Vehicles.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 8 of the Complaint.

9.    Defendants also have made material misrepresentations and have suppressed and concealed material information regarding the Defective Design of the Engines in Class Vehicles. Defendants have intended to mislead the purchasing public through such misrepresentation and concealment for the purpose, among others, of continuing to marker Class Vehicles and to avoid the expense feasible preventative maintenance and repairs.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 9 of the Complaint.

10.    Plaintiff alleges that Defendants are liable for costs of inspecting, preventative maintenance and proper lubrication oils, and of repairing or replacing the Defective Engines. Defendants are also liable for the diminished value of Class Vehicles, the payment of reasonable attorneys' fees and treble damages.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 10 of the Complaint.

11.    Plaintiff Don Harris has been a resident of Illinois at all times relevant to this controversy. He currently resides in Chicago, Illinois.

**Answer**

Chrysler lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, and on that basis denies the same.

12.    Defendant DaimlerChrysler Corporation is a foreign corporation, with its principal place of business and national headquarters located in Auburn Hills, Michigan. Defendant designs, manufacturers and sells motor vehicles throughout the United States under several prominent brand names including Chrysler® and Dodge®. In addition, the Vehicles are advertised, distributed and sold at multiple places of business in this district and the State of Illinois. These locations were and are maintained by this Defendant's dealers for the sale of the Vehicles and this Defendant has sold the years and models in question in the State of Illinois during the Class Period and presently.

**Answer**

Chrysler admits that its principal place of business and national headquarters are in Auburn Hills, Michigan. It admits that it designs and assembles motor vehicles and vehicles under the brand names alleged are sold throughout the United States. It admits that vehicles are advertised, sold and distributed at multiple places of business within this district and in the State of New Jersey by independent dealers. It denies that it makes retail sales to consumers. It alleges that new and used vehicles assembled by Chrysler are sold by independent retailers and other third parties. It admits Chrysler-authorized dealers have and do maintain some of locations where vehicles assembled by Chrysler are sold. Chrysler denies all remaining allegations and innuendo of Paragraph 12.

13.    Defendant Chrysler LLC is a Delaware limited liability company, which, upon information and belief, is owned by Chrysler Holding, LLC, a limited liability company owned jointly by Defendant DaimlerChrysler and a subsidiary of Cerberus Capital Management, L.P. Upon information and belief, as of August 2007, the production and sale of Chrysler and Dodge motor vehicles is conducted by (or under the auspices of) Chrysler LLC. Further, upon information and belief, as of August 2007, Chrysler LLC assumed at least joint responsibility for any liabilities and/or obligations in connection with or arising out of the performance, operation, condition or servicing of Chrysler and Dodge motor vehicles, including, without limitation, the Class Vehicles.

**Answer**

Chrysler admits that DaimlerChrysler Corporation converted into Chrysler LLC in 2007, and that as of August 2007 Chrysler LLC and /or its subsidiaries have assembled and conducted the sales of Chrysler and Dodge vehicles formerly conducted by DaimlerChrysler Corporation. Chrysler states that it is the only correctly named defendant in this action. There no longer exists an entity

known as DaimlerChrysler Corporation. Chrysler denies the remaining allegations and innuendo of Paragraph 13.

14.    This Court has original jurisdiction over this Class action under 28 U.S.C. §1332(d)(2), (d)(5)(B), (d)(6) because (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least Plaintiff and the Defendants are citizens of different states.

**Answer**

Chrysler admits that this Court has original jurisdiction of this action under 28 U.S.C. §1332(d)(2), (d)(5)(B), (d)(6) because plaintiff has made the allegations set forth in Paragraph 14 of the Complaint. Chrysler admits that the two alleged subclasses, as defined by Plaintiff, are claimed by Plaintiff to contain more the 100 members; that alleged subclasses, combined, claim to seek an aggregate amount in excess of $5,000,000; and that there is minimal diversity. Chrysler denies that the claims have any merit, denies that any class can be certified, and further alleges that Plaintiff and the purported class are not entitled to any of the relief they seek. It denies all other claims and innuendo of Paragraph 14 of the Complaint.

15.    Venue in this Court is proper in that Defendants transacted business in this district and the conduct complained of occurred in this district, as well as elsewhere in Illinois.

**Answer**

Chrysler does not dispute that venue is proper in this district. It denies all remaining allegations and innuendo of Paragraph 15 of the Complaint.

16.    The Engine in Class Vehicles operates based on internal combustion. Such Engines produce heat and require properly designed and properly functioning cooling and lubrication systems. Motor oil performs this dual purpose of cooling and lubrication in an internal combustion engine.

**Answer**

Chrysler admits that the makes and model year vehicles allegedly within the class have internal combustion engines. Chrysler admits that the engines of these vehicles produce heat, and their internal combustion engines have cooling and lubrication systems. It admits that motor oil performs a dual purpose of cooling and lubricating internal combustion engines. It denies any and all allegations that it did not properly design the cooling and lubrication systems in the vehicles

alleged to be "class vehicles," and denies that those systems do not perform properly.  It denies all remaining allegations and innuendo of Paragraph 16 of the Complaint.

17.    Proper engine design requires that the temperature of the Engine be controlled. An adequate supply of motor oil and adequate circulation of this oil is an essential part of this design objective. If the supply of oil (sump size) is not adequate, and/or is exposed to excessive heat, the oil will prematurely degrade and form Oil Sludge.

**Answer**

Chrysler admits that its engines can overheat and that overheating can occur for various reasons.  An engine that is too cold or too hot may not operate properly.  It admits that motor oil and circulation of motor oil can assist in temperature control.  It alleges that engine design objectives take into account many factors and goals, some of which relate to temperature control.  It admits that, in some circumstances, oil sludge can result, indirectly, from a variety of factors that affect engine heat.  Chrysler denies any allegation and innuendo that the vehicles in the alleged class have an inadequate supply of oil or inadequately circulate engine oil.  It denies that the oil degrades prematurely; and it denies all remaining allegations and innuendo of Paragraph 17.

18.    Proper engine design also requires the separation of hot "blow by" gases (created by combustion of gasoline) from the oil supply ("Positive Crank Case Ventilation" or "PCV").  These gases, if not properly ventilated, will also result in accelerated oil degradation and the formation of Oil Sludge.

**Answer**

Chrysler admits that gases created by the combustion of gasoline can affect engine heat, as can the ventilation of those gases.  It denies any allegation and innuendo that the separation of "blow by gases" and engine oil in Chrysler vehicles is inadequate, or that the Chrysler vehicles experience accelerated oil degradation.  It denies all remaining allegations and innuendo of Paragraph 18 of the Complaint.

19.    Oil Sludge is inherently harmful and damages the Engine in Class Vehicles because it causes the oil to lose its capacity to lubricate and cool the engine.  Oil sludge restricts the flow of oil to the moving parts of the engine and/or results in complete oil starvation.

**Answer**

Chrysler admits that oil sludge can harm engines, depending on a variety of circumstances. It denies all remaining allegations and innuendo of Paragraph 19.

20.    The Defective Design of the Engine in Class Vehicles emanates from the excessive heat produced by operation of the engine.  As a result of this excessive heat, the specific factors which result in the formation of oil sludge include the following:

a.    An Engine oil sump capacity of only five quarts which is too small and otherwise given the excessive heat produced by the operation of the Engine. This sump capacity resulting in inadequate oil circulation, inadequate cooling, and accelerated oil degradation resulting in the formation of Sludge and carbon deposits which block oil passageways; and

b.    A defectively designed and inadequate PCV system which does not adequately vent "blow by" gases, further resulting in accelerated oil degradation and the formation of Oil Sludge.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 20, including its subparts.

21.    The Design Defect in the Engine in Class Vehicles causes the accelerated degradation of motor oil and formation of Oil Sludge in all Class Vehicles (the "Oil Sludge Malfunction"). The Oil Sludge Malfunction, and the resulting damage to the Engine, begins on the first day of operation of the Class Vehicles and continues throughout the life of the Class Vehicles.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 21 of the Complaint.

22.    The Oil Sludge Malfunction constitutes an actual manifestation of the Design Defect and actual damage, injury and harm to the Engine in the Class Vehicles. A direct consequence of the Oil Sludge Malfunction is the repetitive physical injury to Engine parts, including, but not limited to, excessive wear and tear which occurs on a constant and ongoing basis in all Class Vehicles, as well as the formation of carbon deposits, which block oil passageways and restrict oil circulation in the Engines.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 22 of the Complaint.

23.    The constancy of this excessive wear and tear on engine parts and restriction of the oil circulation in the Engines has caused actual mechanical failure in thousands of Class Vehicles, for which Class members have been forced to expend their own money in order to restore their Vehicles to full and safe operation.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 23 of the Complaint.

24.    As a result of the on Sludge Malfunction, all Class Vehicles have a diminished useful life, even if there has been no actual mechanical failure.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 24.

25.    No amount of driver care or diligent engine maintenance can prevent or forestall the Oil Sludge Malfunction from occurring in the Class Vehicles – only design modifications of the Engine can correct the Design Defect.

**Answer**

Chrysler denies all allegations and innuendo of Paragraph 25 of the Complaint.

26.    As a consequence of the Design Defect, the maintenance regimen promulgated by Defendants (concerning both the kind of engine oil to be used and the interval at which this oil should be changed) is incapable of preventing the on Sludge Malfunction - no matter how assiduously followed by a Class Vehicle user.

**Answer**

Chrysler denies the existence of a "design defect" and denies all remaining allegations and innuendo of Paragraph 26 of the Complaint.

8

27.    Determining that a particular Engine has failed mechanically due to the Oil Sludge Malfunction, or that a particular Engine needs expurgation of Oil Sludge build-up, may be determined by quick, objective, inexpensive and standardized internal engine analysis, often involving a simple visual confirmation, which docs not require any individualized or subjective fact-finding. Indeed, it is only by means of such internal engine analysis that Oil Sludge formation or damage to engine parts can properly be detected and confirmed.

**Answer**

Chrysler denies the existence of an "oil sludge malfunction" in its vehicles, and denies all remaining allegations and innuendo of Paragraph 27 of the Complaint.

28.    The Design Defect of the Engine in Class Vehicles is not a matter that is known within the general public. This is because the information is technical in nature and because an Oil Sludge Malfunction, and its causal relationship to Engine failure, is not apparent to the ordinary consumer. The dissemination of such information, which is proprietary, is also exclusively within the control of the defendants.

**Answer**

Chrysler denies the existence of a design defect in the "class vehicles" and denies all remaining allegations and innuendo of Paragraph 28 of the Complaint.

29.    Defendants, because of their longstanding involvement in the design and manufacture of internal combustion Engines, were aware of the risk associated with the Oil Sludge Malfunction, and with the means available to prevent this Design Defect.

**Answer**

Chrysler denies the existence of the "oil sludge malfunction" and denies the existence of a design defect. Chrysler admits that it and its corporate predecessors have longstanding involvement in the design and manufacture of internal combustion engines. Chrysler denies all remaining allegations and innuendo of Paragraph 29 of the Complaint.

30.    The prevention of an Oil Sludge Malfunction is a decade's old automotive design objective. Before a particular engine is mass produced to the public, a proto-type of the engine is, or should be, operated under "engine sequence" conditions in which the oil is monitored to determine whether premature degradation win occur. Such testing also provides the basis for correcting the Malfunction through design modification.

**Answer**

Chrysler lacks knowledge or information sufficient to form a belief as to the truth of the allegation that "the prevention of an Oil Sludge Malfunction is a decade's old automotive design objective." Chrysler admits that engine testing is prudent, for a variety of reasons, before the mass production of a particular engine. It further admits that iterative design can improve vehicle performance. It denies the remaining allegations of Paragraph 30 of the Complaint.

31.    Another test method utilized to determine whether an engine malfunctions and produces Oil Sludge is through "field testing". This testing involves the monitoring of vehicles that have been placed into use in the stream of commerce.

**Answer**

Chrysler admits that field testing occurs, for a variety of reasons, at times before and after vehicles have been placed into the stream of commerce. It is one, but not the only way to monitor the performance of a vehicle fleet. Chrysler denies the remaining allegations and innuendo of Paragraph 31 of the Complaint.

32.    The likelihood that the Engine in Class Vehicles would malfunction and produce Oil Sludge should have been apparent to Defendants by virtue of their design experience. Nevertheless, the Design Defect and the resulting Engine damage caused by the Oil Sludge Malfunction became known to the Defendants soon after they placed the Class Vehicles into the stream of commerce.

**Answer**

Chrysler denies the existence of a design defect or "oil sludge malfunction." It denies all remaining allegations and innuendo of Paragraph 32 of the Complaint.

33.    Defendant discovered that the Engine in Class Vehicles was substantially more the Engine and/or drain oil away from excessively hot engine surfaces. Defendants also "hot-running"

than anticipated, and that the excessive heat produced by the Engine was accelerating the degradation of the oil and forming hard carbon deposits. Defendants discovered that the 5 quart oil capacity it had designed for use in the Engine was wholly inadequate to cool discovered that the PCV system for the Engine was not functioning properly, which further contributed to accelerated oil degradation. Defendants thus discovered that the combination of these factors destined the Engine to experience the Oil Sludge Malfunction and accelerated Engine failure.

**Answer**

Chrysler denies all allegations and innuendo of Paragraph 33 of the Complaint.

34.     Defendants also discovered from their study of the Class Vehicles that preventative measures could be undertaken by Defendants that would ameliorate the harm caused by the Oil Sludge Malfunction.  These measures included the use of a high quality synthetic motor oil less sensitive to heat degradation, more frequent oil change intervals, and preventative inspection and cleaning of the engines in Class Vehicles.

**Answer**

Chrysler denies the existence of an "oil sludge malfunction." It admits that regular engine maintenance, regular oil changes, the use of high grade oil, engine cleaning, and other steps can improve and extend engine performance.  It denies all remaining allegations and innuendo of Paragraph 34 of the Complaint.

35.     In addition, Defendants discovered soon after the Class Vehicles were placed into the stream of commerce what design modifications were necessary to eliminate the Oil Sludge Malfunction. These design changes included at least the use of a larger 6 quart capacity oil sump and a properly functioning PCV system. These relatively simple design modifications, which cost the Defendants pennies on the dollar compared to the cost of an engine failure, were not implemented by the Defendants for any of the Class Vehicles.[1]

---

[1] Defendants implemented these design modifications in subsequent versions of the 2.7 liter V6 engine.

**Answer**

Chrysler denies the existence of an "oil sludge malfunction."  It denies the remaining allegations and innuendo of Paragraph 35 of the Complaint.

36.     As opposed to issuing recall notices to owners of Class Vehicles or to otherwise advise consumers of the Design Defect, and the preventative measures that could be taken to ameliorate the harm caused by the Defect, the Defendants continued to manufacture and distribute hundreds of thousands of Class Vehicles with actual knowledge that the Engines in these Vehicles were malfunctioning and not fit for their intended purpose.

**Answer**

Chrysler denies the existence of a design defect, denies the need for any "recall," and denies the remaining allegations and innuendo of Paragraph 36.

37.     The Defendants sought to conceal the Oil Sludge Malfunction through various means, including keeping their definitive testing information secret, even from their own dealerships, and falsely attributing Oil Sludge related Engine damage to poor vehicle maintenance by consumers. The Defendants also sought to identify any consumer claims which it foresaw as creating a risk that its wrongdoing would become known in the public domain, and solicited contractual settlement and releases of such claims.

**Answer**

Chrysler denies the existence of the "oil sludge malfunction" and denies all remaining allegations and innuendo of Paragraph 37 of the Complaint.

38.     The Defendants have occasionally admitted to some Class Vehicle owners or lessees by its words and action, that the Oil Sludge Malfunction should be covered by its warranties and denied this to others.  Defendants have thus maintained a secret warranty practice for some consumers while denying it for others, thereby engaging in an unfair, deceptive, arbitrary and unconscionable trade practice.

**Answer**

Chrysler denies the existence of an "oil sludge malfunction." It admits that it sometimes denies repairs to vehicles where such repairs fall outside the scope of the written warranties of repair. It also admits that it sometimes makes goodwill repairs outside of the manufacturer's warranties based on a variety of individual circumstances. It denies that it maintains any "secret warranty practice" and denies the remaining allegations and innuendo of Paragraph 38 of the Complaint.

39.    Defendants have sought to conceal the Design Defect *because* the information is material to the decision whether to purchase one of its Vehicles. This deceptive practice has occurred in spite of the legal and equitable duties imposed on the Defendants to inform vehicle owners and prospective purchasers of the Oil Sludge Malfunction.

**Answer**

Chrysler denies the existence of a design defect and denies the existence of an "oil sludge malfunction." It denies the remaining allegations and innuendo of Paragraph 39 of the Complaint.

40.    Defendants knowingly concealed material information about the Design Defect from consumers with the intent that they would rely on the concealment and purchase the Class Vehicles.

**Answer**

Chrysler denies the existence of a design defect. It denies the remaining allegations and innuendo of Paragraph 40 of the Complaint.

41.    Plaintiff alleges that Defendants had actual knowledge of the Design Defect (or should have known of the Design Defect) before the initial introduction of Class Vehicles into the stream of commerce. Alternatively, Plaintiff alleges that Defendants had actual knowledge of the Design Defect shortly thereafter as a result of (a) investigation by Defendants' engineers and (b) information exchanged between Defendants and their suppliers of oil and oil additives.

**Answer**

Chrysler denies the existence of a design defect. It denies the remaining allegations and innuendo of Paragraph 41 of the Complaint.

42.    The failure of the Engines in Class Vehicles will more likely than not occur when the Vehicle is in operation, resulting in a sudden and unexpected loss of power while the Vehicle is

traveling on a public roadway. This poses an obvious safety risk to the operator, any passengers, and to other motorists.

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 42 of the Complaint.

43.    The following reports by consumers of the Class Vehicles are illustrative of this unreasonable risk of harm:

> - "... almost got into an accident on 2 occasions because my car turned off on me while driving! once on the expressway and once while making a turn."
>
> -"One afternoon when I was driving to the post office, 1 heard a knocking noise coming from the car. I was immediately worried so I was going to pull over. While I was about to pull over, the engine died on me. This almost caused an accident because I could not get out of the way from a car that was about to turn into a parking lot. Thankfully, I used all of my strength and power to turn the steering wheel."
>
> - "Vehicle broke down going down highway while driving which could have caused accident."
>
> - "As I was driving the engine froze up nearly causing accident"
>
> - "Engine failed while driving, avoided accident"
>
> - "Danger of accident on interstate because of engine failure."
>
>  "Engine came apart without warning on highway at 65 mph.  Just missed being involved in serious & catastrophic accident."

**Answer**

Chrysler denies the allegations and innuendo of Paragraph 43 of the Complaint.

44.    The Defendants have had actual knowledge of the safety risks associated with the Design Defect in the Engine for years and the Defendants have deliberately placed Class Vehicles into the stream of commerce with knowledge of these risks. Despite Defendants" knowledge, they concealed these safety risks from Class members and failed to alert Class members about the unreasonable risk of harm.

**Answer**

Chrysler denies the existence of a design defect. It denies all remaining allegations and innuendo of Paragraph 44 of the Complaint.

45.     The Design Defect causes the Oil Sludge Malfunction in all Class Vehicles regardless of whether II Class member literally complies with Defendants' maintenance recommendations. Moreover, Defendants' maintenance recommendations are improper and inadequate in several respects, given the Design Defect, and aggravates the Oil Sludge Malfunction resulting from the Design Defect.

**Answer**

Chrysler denies the existence of a design defect and the oil sludge malfunction. It denies all remaining allegations and innuendo of Paragraph 45 of the Complaint.

46.     The express warranty issued for Class Vehicles purports to exclude repairs related to the Oil Sludge Malfunction and to otherwise limit or exclude the rights of Class members to pursue related claims against Defendants based on the implied warranty of merchantability. Plaintiff alleges, on information and belief, that Defendants incorporated these purported exclusions precisely because Defendants were aware of the Design Defect in the Engines of Class Vehicles and knew that such Defect would cause the Oil Sludge Malfunction.

**Answer**

Chrysler denies the existence of an oil sludge malfunction and denies the existence of a design defect. It states that the terms of its manufacturer's warranties of repair speak for themselves, and further admits that they exclude repairs for mechanical problems associated with lack of or improper vehicle maintenance. It denies all remaining allegations and innuendo of Paragraph 46.

47.     Thus, Defendants wrongfully attempted to exclude from express and implied warranty coverage damage which Defendants knew would occur as a result of the Design Defect. In light of Defendants' knowledge of the Design Defect and the resulting safety risks, Defendants' purported attempt to exclude Oil Sludge from the express and implied warranty is unconscionable

and constitutes elicit overreaching thereby rendering any such purported exclusion unconscionable and ineffective.

**Answer**

Chrysler denies the existence of an oil sludge malfunction and denies the existence of a design defect. It denies all the remaining allegations and innuendo of Paragraph 47.

48.    Defendants intentionally concealed the Design Defect by engaging in conduct, including concealment of material facts, intended to hide detectable manifestations of the Design Defect and/or mislead Class members about the fact or effect of the Design Defect until after the warranty period had expired.

**Answer**

Chrysler denies the existence of a design defect. It states that the terms of its manufacturer's warranties of repair speak for themselves, and further admits that they exclude repairs for mechanical problems associated with lack of, or improper, vehicle maintenance. It denies all remaining allegations and innuendo of Paragraph 48.

49.    Defendants thereby wrongfully and unconscionably sought to transfer the risk of ultimately repairing damage due to the Design Defect and Oil Sludge Malfunction from Defendants to unwitting purchasers or lessees of the Glass Vehicles.

**Answer**

Chrysler denies the existence of an oil sludge malfunction and denies the existence of a design defect. It states that the terms of its manufacturer's warranties of repair speak for themselves, and further admits that they exclude repairs for mechanical problems associated with lack of, or improper, vehicle maintenance. It denies all remaining allegations and innuendo of Paragraph 49.

50.    The Defendants had an affirmative duty to disclose the true facts relating to the Design Defect, the Oil Sludge Malfunction, and associated safety risks to purchasers and users of Class Vehicles and to the general public.

**Answer**

Chrysler denies the existence of a design defect, an oil sludge malfunction, and denies that its vehicles present a safety risk as alleged by Plaintiff. It denies all remaining allegations and innuendo of Paragraph 50 of the Complaint.

51.    The information the Defendants wrongfully suppressed and concealed was material to actions by Class members including the decision to purchase Class Vehicles and the maintenance and repair of Class Vehicles.

**Answer**

Chrysler denies the existence of a design defect, an oil sludge malfunction, and denies that its vehicles present a safety risk as alleged by Plaintiff. It denies all remaining allegations and innuendo of Paragraph 51 of the Complaint.

52.    Plaintiffs and Class members had a reasonable expectation that the Defendants would design, manufacture, market and distribute the Class Vehicles without the Engine Design Defect and without serious and significant safety risks and hazards. Plaintiffs and the Class members also had a reasonable expectation that Defendant would design, manufacture, market, and distribute Class Vehicles with a reasonable useful life and reasonable value undiminished by the Design Defect and Oil Sludge Malfunction.

**Answer**

Chrysler denies the existence of a design defect, the existence of an oil sludge malfunction, and denies the existence of the safety risks alleged by Plaintiff. It alleges that customers' expectations about vehicles vary widely, and depend on a variety of individualized factors. Chrysler denies all remaining allegations and innuendo of Paragraph 52 of the Complaint.

53.    Specifically, Plaintiffs allege an affirmative duty to disclose and not to conceal the material facts relating to the Design Defendant and Old Sludge Malfunction based upon the following circumstances:

        (a)    Defendant Chrysler had exclusive knowledge of the material information regarding the nature and extent of the Engine Design Defect and Oil Sludge Malfunction;

        (b)    Defendant Chrysler was in a superior position to know the true facts relating to the Design Defect and the Oil Sludge

      Malfunction and Plaintiffs could not reasonably have discovered such information;

(c)      Chrysler intentionally and wrongfully concealed and suppressed the true facts with respect to the Design Defect and the Oil Sludge Malfunction with the intent to defraud the Plaintiffs and the Class Members;

(d)      Plaintiffs and Class Members were unaware of the material facts and would not have acted as they did, if Plaintiff and the Class Members had known of the concealed or express facts. Specifically, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would not have paid the same price for Class Vehicles;

(e)      The Design Defect and the Oil Sludge Malfunction pose significant safety risks and hazards to Plaintiff, Class Members, and members of the general public; and

(f)      Ag a result of the concealment and suppression of the material facts as alleged herein, the Plaintiffs and the Class Members have sustained actual economic damages.

**Answer**

Chrysler denies the existence of a design defect, the existence of an oil sludge malfunction, and denies the existence of the safety risks alleged by Plaintiff. It denies all remaining allegations and innuendo of Paragraph 53 of the Complaint, including all subparts.

54.      In February of 1999, Plaintiff Don Harris purchased a 1999 Chrysler Concorde containing the Engine from Mancuri Chrysler Dodge in Oak Lawn, Illinois. Mr. Harris purchased his Vehicle new. Had Mr. Harris known of the Design Defect and the Oil Sludge Malfunction present in the Engine he would not have purchased this Vehicle.

**Answer**

Chrysler admits that Plaintiff purchased a 1999 Chrysler Concorde from Mancuri Chrysler Dodge in Oak Lawn in February 1999. It denies the existence of an oil sludge malfunction and denies the existence of a design defect. It denies all remaining allegations and innuendo of paragraph 54 of the Complaint.

55.      In October of 2001, Mr. Harris was driving his Vehicle on a public roadway when the Engine began to make unusual mechanical noises. Mr. Harris took the vehicle to Mancuri Chrysler Dodge for diagnosis of the problem, where he was informed that the Engine suffered major

mechanical damage. The Vehicle was repaired under warranty; however, Mr. Harris was not informed that the Engine had failed due to the Design Defect.

**Answer**

Chrysler denies the existence of a design defect. It lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 55, and on that basis denies the same.

56.    The Engine in the Vehicle failed a second time due to the Oil Sludge Malfunction in January of 2006, at which time Mr. Harris was informed that he would need to replace the Engine at an estimated replacement cost of $5,000. Mr. Harris was denied reimbursement for these repair costs by the Defendants.

**Answer**

Chrysler denies the existence of an "oil sludge malfunction." It lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56, and on that basis denies the same.

57.    Plaintiff brings this Class action pursuant to Fed. R. Civ. Procedure Rule 23 (a), and (b)(3) on his behalf and on behalf of the following two damages subclasses (hereafter collectively referred to as the "Classes"):

> Subclass A – The Mechanical Failure
>
> This subclass consists of all persons in the State of Illinois who purchased or leased a model year 1998-2004 Chrysler Concorde. Chrysler Sebring, Dodge Intrepid or Dodge Stratus equipped with a 2.7 liter internal combustion engine which failed mechanically due to Oil Sludge Malfunction, and for which that purchaser or lessee has or will incur engine repair costs.
>
> Subclass B – The Oil Sludge Build-up Subclass
>
> This subclass consists of all persons in the State of Illinois who purchased or leased a model year 1998-2004 Chrysler Concorde, Chrysler Sebring, Dodge Intrepid or Dodge Stratus equipped with a 2,7 liter internal combustion engine which has not yet failed mechanically due to Oil Sludge Malfunction, and for which that purchaser or lessee has or will incur costs for inspection and/or cleaning of the engine"

**Answer**

The allegations of Paragraph 57 state legal conclusions to which no answer is required. To the extent an answer is required, Chrysler admits that plaintiff brings this action as stated in paragraph 57 of the Complaint, but denies the legal conclusions stated therein. It also denies that the claim has merit and denies that it can be brought on behalf of the sub-classes alleged. It denies all remaining allegations and innuendo of Paragraph 57.

58. These Classes are composed of thousands of persons geographically dispersed throughout Illinois, the joinder of whom in one action is impractical. The Classes are ascertainable and identifiable. The precise number of members of the Classes can only be ascertained through discovery, which includes Defendants' sales, service, maintenance and complaint rewards. Questions of law and fact common to the Classes exist as to all members and predominate over any questions affecting only individual members.

**Answer**

Chrysler admits that it has sold thousands of the model year vehicles claimed by Plaintiff to be "class vehicles" within Illinois. Chrysler denies all remaining allegations, innuendo and legal conclusions of Paragraph 58 of the Complaint.

59. The issues of product Defect, as well as causation of each product Malfunction for every Class member, are subject to generalized proof in a single trial, and thus outweigh any issues in the proposed Class action which might be subject to individualized proof

**Answer**

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 59 of the Complaint.

60. The common legal and factual issues for the proposed Classes include the following:

a. whether the Engine in the Class Vehicles have a common Design Defect;

b. whether the Engine in the Class Vehicles are fit for their ordinary and intended purpose;

c.    whether the useful life of the Engine in the Class Vehicles is reduced as a result of the Design Defect and the Oil Sludge Malfunction;

d.    whether the Defendants sought to conceal the Design Defect from the public, and/or to suppress or misrepresent the existence of the Defect;

e.    whether the Class Vehicles were merchantable when Defendants placed these Vehicles into the stream of commerce and thereafter;

f.    whether the Defendants have engaged in an unconscionable commercial practice, including aggravated acts, as defined under Illinois's Consumer Fraud Act and Deceptive Business Act, 815 § ILCS 505/1, *et seq.*;

g.    whether the Defendants have been unjustly enriched to the detriment of the consumers owning or leasing the Class Vehicles;

h.    whether the Class members are entitled to an inspection and cleaning of the Engines in Class Vehicles;

i.    whether Class members are entitled to restitution;

j.    whether the Design Defect has resulted in diminished value of Class Vehicles, and

k.    whether the Class members are entitled to actual damages and if so, the appropriate amount thereof.

**Answer**

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 60 of the Complaint, inclusive of all subparts.

61.    Plaintiff's claims are typical of the claims of the Class members, as all such claims arise out of Defendants' conduct ill: a) designing, manufacturing, marketing, advertising, warranting, distributing, selling and leasing the defective Class Vehicle; b) Defendants' conduct in concealing,

suppressing or failing to disclose the Defect in the Class Vehicles and; c) the purchase or lease of the Class Vehicles by Plaintiff and Class members.

**Answer**

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 61 of the Complaint, inclusive of all subparts.

62.      Plaintiff will fairly and adequately protect the interests of the Class members and has no interests antagonistic to those of the Class members. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving deceptive trade practices, breach of warranties, product liability and Engine Design Defects.

**Answer**

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 62 of the Complaint.

63.      This Class action is appropriate for certification because questions of law and fact common to the Classes predominate over questions affecting only individual members. The product Malfunction which occurs is due exclusively to the Design Defect. The Class Vehicles have all malfunctioned as a result of the same causative factors inherent in this flawed Engine design. Determining that a particular Engine failure has occurred as a result of the Oil Sludge Malfunction is able to be achieved by means of quick, objective, inexpensive and standardized analysis and does not require any individual or subjective fact-finding. Such analysis is identical for all models which comprise the Class Vehicles.

**Answer**

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 63 of the Complaint.

64.      A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is

impracticable.  Should individual Class members be required to bring separate actions, this Court and Courts throughout Illinois would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case by case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this Class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

### Answer

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 64 of the Complaint.

65.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

### Answer

Chrysler incorporates its answers to the preceding Paragraphs of the Complaint, as if fully set forth herein.

66.    Defendants are estopped from relying upon any statutes of limitation by reason of their fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct.

### Answer

Chrysler denies the allegations, innuendo and legal conclusions of Paragraph 66 of the Complaint.

67.    Plaintiff Harris incorporates the above allegations by reference as if set forth herein at length.

### Answer

Chrysler incorporates by reference its response to all of the preceding allegations of the Complaint, as if fully set forth herein.

68.     This Count is brought against Defendant pursuant to Illinois' common law doctrine of unjust enrichment.

**Answer**

Chrysler states that Paragraph 68 of the Complaint states a legal conclusion to which no answer is required.  To the extent that an answer is required, Chrysler denies the allegations of Paragraph 68.

69.     During the Class Period, Defendants manufactured and sold the Class Vehicles which are defective due to the Design Defect and resulting safety risks.

**Answer**

Chrysler denies the allegations of Paragraph 69 of the Complaint.

70.     Defendants had knowledge of the Design Defect in the Class Vehicles.

**Answer**

Chrysler denies the existence of a design defect, and denies all remaining allegations of Paragraph 70 of the Complaint.

71.     Despite Defendants' knowledge of the defect in the Vehicles, Defendants have failed to disclose the existence of this defect (a material fact) to Plaintiffs and members of the Class at the times each of them purchased their Vehicles.

**Answer**

Chrysler denies the existence of a design defect, and denies all remaining allegations of Paragraph 71 of the Complaint.

72.     During the Class Period, Plaintiff and members of the Class conferred upon Defendants, the benefit of payment for their Vehicles, which benefits were non-gratuitous.

**Answer**

Chrysler denies the allegations of Paragraph 72 of the Complaint.

73.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class despite Chrysler's knowledge of the design defect in the Vehicles.   The Defendants had full knowledge and appreciation of such benefits.

**Answer**

Chrysler denies the allegations of Paragraph 73 of the Complaint.

74.     Retaining the non-gratuitous benefits conferred upon Chrysler by Plaintiffs and the Class under these circumstances makes Chrysler's retention of the non-gratuitous benefits unjust and inequitable.

**Answer**

Chrysler denies the allegations of Paragraph 74 of the Complaint.

75.     Because Chrysler's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Chrysler must pay restitution in a manner established by the Court.

**Answer**

Chrysler denies the allegations of Paragraph 75 of the Complaint.

76.     Plaintiff Harris incorporates the above allegations by reference as if set forth herein at length.

**Answer**

Chrysler incorporates its answers to the Paragraphs above as if fully set forth herein.

77.     At all times relevant herein Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA") was in effect. ICFA prohibits "unfair or deceptive practices".

**Answer**

Chrysler states that the allegations of Paragraph 77 set forth a legal conclusion to which no answer is due.  To the extent that an answer is required, Chrysler states that the ICFA speaks for itself, and denies all remaining allegations and innuendo of Paragraph 77 of the Complaint.

78.    Plaintiff and the members of the Class are consumers.

**Answer**

Chrysler states that Paragraph 78 of the Complaint states a legal conclusion to which no answer is required. To the extent that an answer is required, Chrysler denies the legal conclusion of Paragraph 78. Chrysler lacks information or knowledge to form a belief as to the truth of the allegations of Paragraph 78, and therefore denies the same.

79.    Defendants' acts and omissions, including Defendants' concealment and failure to disclose material facts relating to the Design Defect in Class Vehicles constitute deceptive acts and practices under the Illinois Consumer Fraud Act (ICFA).

**Answer**

Chrysler denies the existence of a design defect, denies that it concealed and/or failed to disclose material facts, and denies all remaining allegations and innuendo of Paragraph 79.

80.    Defendants had actual knowledge of the Design Defect in Class Vehicles as alleged herein.

**Answer**

Chrysler denies the existence of a design defect and denies all remaining allegations and innuendo of Paragraph 80 of the Complaint.

81.    Defendants intentionally concealed material facts relating to the Design Defect and intended that Plaintiffs would rely on such deception and concealment by purchasing Class Vehicles.

**Answer**

Chrysler denies the existence of a design defect and denies all remaining allegations of Paragraph 81 of the Complaint.

82.    The deception and concealment of material facts occurred in the course of Defendants' regular business involving trade or commerce.

**Answer**

Chrysler denies that it engaged in concealment and/or deception, and denies all remaining allegations of Paragraph 82 of the Complaint.

83.    Defendants' wrongful acts and omissions, including the concealment of material facts, caused actual damages to the Plaintiffs and Class Members in that the information wrongfully concealed was material to the decision to purchase Class Vehicles. Plaintiff and Class Members would not have purchased Class Vehicles, had they known the true facts relating to the Design Defect and the Oil Sludge Malfunction.

**Answer**

Chrysler denies the existence of a design defect, denies the existence of an oil sludge malfunction, and denies all remaining allegations of Paragraph 83 of the Complaint.

84.    Defendants' deception and concealment of material facts have proximately caused actual damages to the Plaintiffs including, but not limited to, the diminished value of Class Vehicles, the diminished useful life of Class Vehicles, costs of repair, and costs of necessary inspection and preventative maintenance.

**Answer**

Chrysler denies hat it engaged in deception and/or concealment, and denies all remaining allegations of Paragraph 84 of the Complaint.

85.    Because of the safety risks resulting from the Design Defect, Defendants' actual knowledge of the Design Defect, and Defendants' express and implied representations that the Class Vehicles were merchantable and were not defective, Defendants had a duty to disclose and not conceal the material facts relating to the Design Defect and Oil Sludge Malfunction in Class Vehicles.

**Answer**

Chrysler states that Paragraph 85 sets forth a legal conclusion to which no answer is required. To the extent that an answer is required, Chrysler denies the existence of a design defect, denies the existence of an oil sludge malfunction, and denies all remaining allegations, innuendo and legal conclusions of Paragraph 85 of the Complaint.

86.    Defendants knew and intended that Plaintiff and Class Members would rely and act to their detriment as a result of Defendants' deception and concealment of material facts relating to the Design Defect.

**Answer**

Chrysler denies that it engaged in deception and/or concealment, and denies all remaining allegations of Paragraph 86 of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Chrysler prays that plaintiff and the alleged class take nothing by the Complaint; that judgment be entered in its favor and against Plaintiff and the alleged class; that Chrysler be awarded costs of suit herein and attorneys' fees; and that it be awarded such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL.

Chrysler demands a trial by jury on all claims so triable.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses, without admitting the plaintiff's allegations, Chrysler pleads the following:

87.    Plaintiff's Class Action Complaint, and each purported cause of action therein, fails to allege facts sufficient to state a cause of action upon which relief may be granted.

88.    Plaintiff's claims and the claims of the putative class are barred in whole or in part by the statute of limitations, including, but not limited to 815 ILCS 505/10a(e), 810 ILCS 5/2-725 and 735 ILCS 5/13-210.

89.    Plaintiff and members of the putative class failed to provide timely and sufficient notice to Chrysler of the alleged defect and to otherwise comply with any written warranty provided by Chrysler.

90.     Plaintiff and other members of the putative class who did not comply with the operation and maintenance requirements on their Class Vehicles are barred from recovery.

91.     The relief available to Plaintiff and the putative class members, if any, is circumscribed by the terms of the limited written warranty to which they consented upon purchase of their Class Vehicles.

92.     The claims of Plaintiff and members of the putative class may be barred by the doctrines of unclean hands, laches, estoppel, and waiver and/or any recovery would result in Plaintiff and the members of the putative class being unjustly enriched.

93.     The claims of Plaintiff and members of the putative class are barred, in whole or in part, to the extent that, in this or other courts, they have brought actions and have received judgments or settlements on some or all claims asserted.

94.     The claims of Plaintiff and members of the putative class may be barred by the doctrines of accord and satisfaction, payment, release, ratification and/or discharge.

95.     Plaintiff and members of the putative class who misused and/or abused the vehicles that they claim are defective are barred, in whole or in part, from recovery.

96.     The claims of Plaintiff and members of the putative class may be barred, in whole or in part, because the vehicles that are the subject of the Plaintiff's Complaint have been altered and/or modified after leaving Chrysler's control.

97.     The claims of Plaintiff and members of the putative class are barred for lack of a legally cognizable injury.

98.     Plaintiff may not maintain this action, as described in the Complaint, as a class action.

99.     Plaintiff and putative class members have failed to mitigate their damages, if any.

100.    The claims of Plaintiff and members of the putative class may be barred, in whole or in part, by lack of privity.

101.    The claims of Plaintiff and members of the putative class are barred in whole or in part by the provisions of 815 ILCS 505/10b.

102.    Certain putative class members cannot state claims because they purchased their vehicles used.

103.    Some or all putative class members lack standing to assert claims against Chrysler.

104.    There are superseding and/or intervening causes for the damages claimed by plaintiff and other putative class members, if any.

105.    The claims of some putative class members are barred because they lease vehicles rather than own them.

106.    To the extent that plaintiff's claims attempt to apply Illinois law to the claims of persons as to whom Illinois does not apply, such as persons who did not purchase their vehicles in Illinois, the complaint violates the due process rights of Chrysler and such putative class members, and improperly extends the Illinois Consumer Fraud Act to transactions not subject to its scope as a matter of substantive law.

107.    The claims of the Plaintiff and putative class members violate the Rules Enabling Act, 28 U.S.C. § 2072(b)

108.    The claims of the Plaintiff and putative class members intrude on the jurisdiction of the National Highway Traffic Safety Administration, and are preempted and/or barred by the primary jurisdiction doctrine.

109.    Chrysler reserves the right to supplement these affirmative defenses with any and all defenses available under state and federal law as may be revealed in the course of discovery, and in further evaluation and investigation of Plaintiff's claims.

Respectfully Submitted,

**SEDGWICK, DETERT, MORAN & ARNOLD LLP**

By:_____s/ Anthony J. Anscombe_____ _____
          One of the Attorneys for Defendants

Anthony J. Anscombe ARDC# 6257352
C. Kinnier Lastimosa ARDC# 6277860
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530